Filed 7/18/22 Bonhage v. Rawson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER BONHAGE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> HIRAL HANSAPRIYA RAWSON et al., <br><br> Defendants and Respondents. | H047362, H047425, H047477 <br> (Santa Clara County <br> Super. Ct. No. CV271558) |

In September 2014, plaintiffs and appellants Christopher Bonhage and Brittany Collins (appellants), together with two friends, sought to rent a house in San Jose from defendant Hiral Hansapriya Rawson.  Dissatisfied with the response to their effort to rent the house, appellants sued Rawson and other individuals and entities providing real estate broker services to Rawson (brokers), alleging various forms of housing discrimination, including under the Unruh Civil Rights Act (Unruh Act) (Civ. Code, § 51 et seq.) and the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

After the brokers successfully moved for summary judgment, appellants and Rawson proceeded to trial.  The jury returned a verdict in favor of Rawson on all remaining causes of action.  Rawson was then awarded $228,124 in fees and costs after the trial court determined appellants' lawsuit was frivolous, unreasonable or groundless.

Appellants now challenge the three judgments, arguing:  (1) the trial court erred by failing to instruct the jury that a group of unrelated friends is protected from arbitrary discrimination by the Unruh Act; (2) the trial court abused its discretion awarding fees

and costs because the lawsuit was not frivolous; and (3) there was a triable issue of fact as to the brokers' liability under the Unruh Act for having instigated or aided Rawson's discrimination.[1]

We conclude that: (1) any such instructional error was not prejudicial because the jury determined that Rawson did not discriminate against appellants in the first place, so there could not have been any violation of the Unruh Act, regardless of whether it protects groups of unrelated friends from discrimination; (2) the trial court's determination that the lawsuit was frivolous was not an abuse of discretion; and (3) after the brokers carried their initial burden in support of their motion for summary judgment, appellants failed to carry their burden of showing a triable issue of material fact as to whether the brokers aided any discrimination by Rawson. Accordingly, we affirm the three judgments in favor of defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual background

In August 2014, Rawson owned a house in San Jose which she rented to tenants Ali Afsin Bulbul and Esperanza Outeirino, a married couple who lived in the house with their children, for $3,200 per month rent. The lease extended through January 2015, but on August 14, 2014, Outeirino informed Rawson that the family would be leaving the property on September 15 to move into a new house they had purchased.

---

[1] The three challenged judgments are from cases H047425, H047477, and H047362, respectively.

[2] We take our facts as they relate to the three appeals from: (1) the evidence at trial, counsel's arguments, and the court's instructions (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580-581 (*Soule*)); (2) the record that was before the trial court in connection with the brokers' motion for summary judgment (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1186, fn. 4 (*Thompson*)); and (3) the materials submitted to the court in connection with Rawson's motion for fees. (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1388 (*Cummings*).)

Rawson subsequently retained Murahari Amarnath as her realtor to assist in finding a new tenant for the house.[3] On August 26, 2014, Amarnath posted a listing for the house on Multiple Listing Service, advertising it for $3,400 per month based on his assessment of an appropriate fair market rate. Rawson told Amarnath that she was looking for tenants who would sign a one-year lease but who would remain steady tenants at the property for many years to come, so she "would not have to keep finding new tenants every year."

Shortly thereafter, Bulbul posted a separate advertisement for the property on the website Craigslist.com, without permission from, and unbeknownst to, Rawson or Amarnath, because Bulbul and Outeirino were dissatisfied with Amarnath's efforts to rent the house at the listed $3,400 rate. Bulbul and Outeirino did not want to be responsible for paying any rent beyond their September 15 departure date and were eager for Rawson to find new tenants as quickly as possible.

Bulbul's listing set the rent at $3,200 per month through January 2015, after which it would increase to $3,400 per month. After being confronted by Amarnath and his assistant Eunice Foster about the unauthorized advertisement, Bulbul offered to cover the difference of $200 per month.

Bulbul's listing also described the house as a "delightful home for the family." That language had not been included in Amarnath's original listing. Foster subsequently modified and re-posted Bulbul's advertisement on Craigslist, without removing that particular language, but changing the rent to $3,400 per month.

On August 31, 2014, Brittany Collins saw the listings on Craigslist and responded to both, asking to see the house. Collins and her boyfriend, Christopher Bonhage, had

---

[3]Amarnath was an agent of defendant Stanford Real Estate Networks, LLC, and was acting as a broker for defendant Silicon Valley Real Estate Corporation. We refer to these parties collectively as "brokers" where appropriate.

been looking for a new place to rent together, possibly with one or two friends, Jessica McCargar and Arielle Aspacio, in part to defray the rent.

Their search included two-, three- and four-bedroom properties in Mountain View, San Jose, Sunnyvale and adjacent areas. Collins and Bonhage were living together in a one-bedroom apartment in Sunnyvale at the time. They had no urgency to move into a new place, although they had grown dissatisfied with their apartment. They communicated to prospective landlords during their search that they were flexible as to a move-in date ranging from September to November. McCargar and Aspacio similarly had no urgency, as each was still living with her respective parents.

Aspacio was planning to move to Santa Cruz within six months to a year to live with her boyfriend and did not intend to remain with the group beyond that time, which she had communicated to the others. McCargar had a full-time job in Hayward and also did massage therapy in Fremont. She had concerns about the commute between the house in San Jose and her job in Hayward. Around mid-September, McCargar changed her mind and decided she did not want to live with the group.

In response to Collins' August 31 e-mail, Foster sent an application form and provided Outeirino's phone number for Collins to contact and arrange a visit to the house. On September 1, Collins, Bonhage and McCargar visited the house. Bulbul and Outeirino showed the group around the house, after which Rawson arrived. At that time, the group told Rawson they wanted to live with another friend of theirs, Aspacio.

The parties dispute what was said at the September 1 meeting. Appellants contend the parties discussed a September 2 deadline to submit applications and that Rawson did not object or disagree. Rawson denies that. After the September 1 viewing, Outeirino e-mailed Collins, copying Rawson and Foster, attaching rental applications and claiming they were due by the next day.

Appellants also contend they were informed at the September 1 viewing that only parties who wished to be on the lease needed to submit applications. Rawson denies that

4

and contends that Amarnath informed her that everyone who would be residing in the house needed to fill out an application and provide a credit report. The application forms themselves stated that "A separate application to rent is required for each occupant 18 years of age or over."

After the visit on September 1, Collins submitted applications for Bonhage and McCargar only. Collins and Aspacio did not submit applications; the group felt that Bonhage and McCargar had the strongest credit scores, as neither Collins nor Aspacio had full-time jobs.

Amarnath and Foster asked Collins to provide rental applications for her and Aspacio, but they were never provided. Foster stated that she asked for the additional applications, but encountered "resistance" from the prospective tenants; Collins responded by saying that they had received "all the applications" they needed. Collins denies that conversation took place.

Bonhage and McCargar provided their proof of income the next day on September 2. Rawson says she liked Bonhage and Collins but grew concerned about the fact that the group had not submitted applications for all prospective tenants, as required. Amarnath also had concerns about Collins as a prospective tenant because she "kept saying, 'I will send an application,' and that never happened."

Rawson and her realtors anticipated receiving applications from other prospective tenants as well. They previously held an open house on August 31, where multiple groups came to view the house, took application forms and indicated they were interested in applying. Rawson expected she would be able to review multiple applicants and select the best ones.

On September 4, Collins e-mailed Foster and inquired about the status of their applications. Foster replied and said she would have an update once she heard back from Rawson. Collins and Bonhage were frustrated with the response, so Bonhage contacted Outeirino. During that conversation, Outeirino provided Rawson's personal phone

number to Bonhage, without Rawson's permission and despite having been instructed not to do so.

Prior to that, Rawson had been discussing the tenant search process with her realtors. On September 5, Foster provided an update via e-mail to Amarnath, with a copy to Rawson, in which she said, "Here is the update on this rental property. So far, only 1 application. Brittany [Collins]. The problem I see with Brittany is that she's moving in with her Boyfriend and 2 other people responsible for rent. This kind of applicant could be a problem should someone on the lease decide to move/opt out of the lease agreement. Priya [Rawson] would be faced with the same issue to find another tenant. . . . She has also agreed that Brittany would not be good [*sic*] candidate as tenant and agreed to another Open House showing."

An additional open house was then held on September 7. At the open house, Rawson felt intimidated by Bulbul, whom she described as aggressively pressuring her to rent the house to Collins, Bonhage and their friends. During that conversation, Rawson stated that she "believed a family would be more stable and less likely to require me to find new tenants again." Rawson did not say that she had decided not to rent to the group, rather only that she wanted to see more applications, consider them, and select the best tenants.

Bulbul then contacted Collins and spoke regularly with her and Bonhage over the next several days. During those conversations, Bulbul shared his frustration regarding Rawson and her realtors' efforts to find new tenants and explained that he thought they were discriminating against appellants, and that "either they're really dumb or they are out smarting" Bulbul and Bonhage. Bulbul also contacted a lawyer during this time, who eventually became counsel for appellants.

After having previously received Rawson's personal phone number from Outeirino, Bonhage called her without warning on September 8. Rawson felt shocked and uncomfortable being confronted in that manner because she had hired the realtors to

6

handle the process and had not authorized release of her personal phone number. During the call, she explained that she liked Bonhage's group but that she had not made up her mind yet. Bonhage claims Rawson told him she preferred to rent to a family; Rawson denies having said that. Rawson claims she did not tell Bonhage she would not rent to his group and instead told him "they were the front runners so far, but that I had not yet decided." She did not say that she had any objection to Bonhage and Collins as an unmarried couple.

After the phone call, Bonhage e-mailed Rawson purporting to confirm the contents of their conversation. In that e-mail, Bonhage stated that he "would like to gently remind you that under the California Fair Employment and Housing Act CA Government Code Section 12955, it is unlawful to discriminate against renters because of marital or familial status."

Over the next several days, Bulbul and Bonhage each communicated with counsel for appellants regarding rental of the house. On September 13, Bonhage e-mailed counsel a purported timeline of events. Two days later, Bonhage called Rawson again and took notes of their conversation. During that conversation, he asked her about her preference for a family. Rawson explained that her concern was only that McCargar and Aspacio might not remain in the house and that "a family might remain tenants longer and save me the trouble of having to find new tenants." Bonhage asked if Rawson had a problem with the fact that he and Collins were not married, to which she said, "that was not at all an issue with me, and that I accepted them as a couple and thought they were a nice couple." She explained that she "could not give him a clear yes or no at that time, that I was still concerned about layoffs at my company and was afraid I might have to sell the house if I lost my job, and I was not able to decide."

Two days later, appellants' counsel sent a letter to Rawson accusing her of discrimination and demanding that she rent the house to appellants and their friends.

7

Rawson then retained counsel. The parties attempted, through their attorneys, to negotiate a lease, but could not reach an agreement.

### B. Procedural background

Appellants filed the initial complaint in this action on October 6, 2014. They subsequently amended the complaint multiple times, culminating with the operative fifth amended complaint filed in September 2018.

The operative complaint alleged 12 causes of action against Rawson, Amarnath, Foster, Stanford Real Estate Networks and Silicon Valley Real Estate Corporation.[4]

The brokers filed a motion for summary judgment in March 2019 as to all causes of action asserted against them. With respect to the Unruh Act cause of action—the only cause at issue on appeal—the brokers argued that the Act does not protect groups of unrelated friends seeking to rent housing, and that the brokers did not have the authority to rent the house. Accordingly, they argued, there could be no triable issue of material fact as to whether they had violated the Act by discriminating against appellants.

Appellants opposed the motion, arguing that the Unruh Act should be construed to apply to groups of unrelated people and that the brokers discriminated against appellants based on such personal characteristics.

The trial court granted the motion, ruling that the brokers had no independent authority to rent the property to appellants so they could not have violated the Unruh Act. Judgment was entered in the brokers' favor.

---

[4] The 12 causes of action were: (1) Invasion of privacy (Cal. Const. art. I, § 1); (2) FEHA housing discrimination (Gov. Code, §§ 12981, 12955, subd. (a)); (3) Interference with fair housing rights (Gov. Code, § 12955.7); (4) FEHA retaliation (Gov. Code, § 12955, subd. (f)); (5) Discriminatory statements (Gov. Code, § 12955, subd. (c)); (6) Discrimination by a real estate licensee (Gov. Code, § 12955, subd. (i)); (7) Aiding and abetting discrimination (Gov. Code, § 12955, subd. (g)); (8) Unruh housing discrimination (Civ. Code, § 51); (9) Unfair business practices (Bus. & Prof. Code, § 17200); (10) Negligence per se; (11) Negligent supervision; (12) Vicarious liability.

Rawson also filed a motion for summary judgment in March 2019. With respect to the Unruh Act cause of action, Rawson argued the Act does not protect groups of unrelated people and that, in any event, Rawson did not discriminate against appellants and did not refuse to rent to them.

Appellants opposed the motion, arguing that Rawson's stated preference for a "family" was sufficient evidence to create a triable issue of fact as to whether she violated the Unruh Act by discriminating against unrelated housemates.

The trial court denied Rawson's motion, holding that, "at a minimum triable issues remain as to the several of the FEHA-based causes of action as alleged against Rawson." The court noted that, although appellants had not presented "any direct evidence from which it could be determined that Rawson acted with 'discriminatory animus' without inference or presumption," the court could not conclude "that it would be impossible for a finder of fact to reasonably infer from Rawson's statements about preferring to rent to a 'family' and her decision to seek further tenant applications rather than providing a definitive answer as to whether she would rent the house to Plaintiffs after they were the only ones to initially apply . . . so that discrimination against Plaintiffs was a substantial motivating factor on her behavior."

The matter then proceeded to trial in August 2019 on appellants' three remaining causes of action against Rawson: the FEHA, FEHA retaliation and Unruh Act claims.

Before the jury was called, the parties raised an issue with the court regarding the proper scope of the Unruh Act as applied to the case, and whether it protects groups of unrelated friends—i.e., familial status—or merely marital status. Rawson's counsel contended the "jury instructions should say that she had to be discriminating against them because they were an unmarried couple."

The court ultimately ruled that, "we're not going towards familial status at all. That's not an issue in this case. Nobody is to raise it and we don't need a jury instruction

9

to say it's not, because nobody is going to raise it as an issue. This is simply a marital status discrimination case."

The issue arose again during trial when Bulbul testified that both he and Bonhage believed Rawson's alleged preference for a family constituted discrimination. The court halted proceedings and stated to the jury: "There's an insinuation that it's against the law to discriminate based on family. That's an incorrect statement of law by the witness. So you're to disregard that. [¶] You will be instructed as to what the law is at the end, and anybody else's opinion as to what the law is is not the law unless the instructions that you get at the end say it's the law."

The court ultimately instructed the jury that appellants "claim Ms. Rawson denied them full and equal accommodations, advantages, and privileges because of their marital status as an unmarried couple, or because of their association with unmarried persons Jessica McCargar and Arielle Aspacio." To establish that claim, appellants were required to prove four distinct elements: (1) Rawson denied, discriminated, or made a distinction that denied full and equal accommodations, advantages, and privileges to appellants; (2) a substantial motivating reason for Rawson's conduct was the marital status of appellants or the people with whom they were associated; (3) appellants were harmed; and (4) Rawson's conduct as a substantial factor in causing that harm.

The jury returned its special verdict on August 12, 2019. With respect to appellants' Unruh Act claim, the jury answered "No" to the first question: "Did Ms. Rawson deny full and equal accommodations, advantages, and privileges to Mr. Bonhage and Ms. Collins?" The verdict form directed the jury to skip the remaining questions relating to the Unruh Act claim if it answered "No" to that question. The jury therefore did not reach the second question, which asked, "Was Mr. Bonhage and Ms. Collins' marital status as an unmarried couple, or because of their association with unmarried persons Jessica McCargar and Arielle Aspacio, a substantial motivating reason for Ms. Rawson refusing to offer to rent the House to Mr. Bonhage and Ms. Collins?"

10

The jury also answered "No" to the question, "Did Ms. Rawson refuse to offer to rent the House to Mr. Bonhage and Ms. Collins," which defeated appellants' FEHA and FEHA retaliation claims. Judgment was subsequently entered in Rawson's favor.

Rawson then moved for attorney fees and costs pursuant to Government Code section 12965, subdivision (b), on the ground that appellants' lawsuit was frivolous, unreasonable or groundless when brought. The trial court granted the motion on the following bases: (1) Rawson had never refused to rent her home to appellants' group; (2) there was never "any evidence that her delay in deciding whether or not to do so was motivated by discrimination based on marital status or retaliation"; (3) appellants had "teamed up" with Bulbul and Outeirino and "tried to bully [Rawson] into making an overly hasty decision to rent to Plaintiffs' proposed group . . . against [Rawson's] best interests"; (4) Rawson had rented to unmarried couples in the past, "even sharing the Property with them while taking in boarders"; (5) Rawson's "actual concern that the group of four proposed tenants was 'unstable' and likely to be a short-lived tenancy turned out to be accurate"; (6) even after appellants' friends decided not to share the rental, they filed suit and "asserted (contrary to the facts) that it was [Rawson's] conduct caused their friends not to share the rental"; and (7) appellants' legal theory that FEHA prohibits discrimination against groups of unrelated friends sharing rental housing was "clearly without merit."

The court awarded Rawson $228,123.77 in reasonable attorney fees, expert witness fees and costs.

Appellants timely appealed each of the three judgments. We ordered the appeals to be coordinated for purposes of briefing and hearing.

## II. DISCUSSION

### A. Appeal of judgment following jury verdict in Rawson's favor (H047425)

Appellants argue that the trial court erred by failing to instruct the jury that the Unruh Act protects unrelated groups of friends or "non-families" from arbitrary

11

discrimination.[5]  They concede there is no existing case law interpreting the Unruh Act in such a manner, but contend that the Act covers all arbitrary discrimination, including against groups of unrelated friends, so that the trial court erred by not instructing the jury accordingly.

As we explain below, we need not reach the issue of whether the Unruh Act should be interpreted to include unrelated groups of friends.  Instead, we determine that, even if the trial court's instruction was improper, appellants have failed to demonstrate prejudicial error.  Our own independent review also confirms that any such error was harmless because the jury determined that Rawson did not deny appellants full and equal accommodations in the first place and an instruction with appellants' theory of the law would not have changed the verdict.

### 1. *Standard of review*

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule*, *supra*, 8 Cal.4th at p. 572.)  Where a court reviews a claim of instructional error, it recites the facts in the light most favorable to the claim of instructional error and assumes the jury might have believed the appellant's version of the facts. (*Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 839, fn. 1.)

_____

[5] Appellants object to four distinct acts by the trial court:  (1) the court's "ruling" before trial that family status is not an issue in the case; (2) its clarification to the jury that it must disregard the witness's statement that it is against the law to discriminate based on family; (3) the instruction actually issued to the jury regarding the Unruh Act; and (4) the court's failure to instruct the jury that the Unruh Act protects unrelated groups of friends from discrimination.  Ultimately, appellants characterize their argument as follows:  "The trial court failed to properly instruct the jury on the meaning of the Unruh Act."  We construe their challenge as one of instructional error.

12

However, even where such error exists, it "is not grounds for reversal unless it is probable the error prejudicially affected the verdict." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1217; *Soule, supra*, 8 Cal.4th at p. 580.) This requirement is set forth in the California Constitution. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].) This restriction on the power of reviewing courts is also " 'amplified by Code of Civil Procedure section 475, which states that trial court error is reversible only where it affects ". . . the substantial rights of the parties . . . ," and the appellant "sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed." ' " (*Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 72 (*Robert*), quoting Code Civ. Proc., § 475; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.)

Our Supreme Court has explained that instructional error is prejudicial where it seems probable that the error prejudicially affected the verdict; to make that determination, a reviewing court must evaluate "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule, supra*, 8 Cal.4th at pp. 580-581.) Reversible error "requires demonstration of prejudice arising from the reasonable probability the party 'would have obtained a better outcome' in the absence of the error." (*Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 20.)

An appellant has the burden of affirmatively demonstrating prejudicial error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) The failure to provide an explicit prejudice analysis constitutes waiver. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106 (*Paterno*).)

13

## 2. *Overview of Unruh Act*

The purpose of the Unruh Civil Rights Act is to "create and preserve 'a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.' " (*White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025, quoting *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167; Civ. Code, § 51.) " 'The Act stands as a bulwark protecting each person's inherent right to "full and equal" access to "all business establishments." ' " (*White*, *supra*, at p. 1025.)

Civil Code section 51, subdivision (b), states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Civil Code section 52, subdivision (a), provides: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages, and any amount that may be determined by a jury . . . ."

Although Civil Code section 51, subdivision (b), enumerates specific categories of people protected by the Unruh Act, our Supreme Court has held that the list "is illustrative rather than restrictive." (*In re Cox* (1970) 3 Cal.3d 205, 216; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155 (*Harris*) [Unruh Act has been construed to apply to several classifications not expressed in the statute].) In *Harris*, the California Supreme Court articulated a three-part test for "determining whether a future claim for discrimination, involving a category not enumerated in the statute or added by prior judicial construction, should be cognizable under the Act": (1) whether the claim is based on a classification that involves personal, as opposed to economic, characteristics; (2) whether a legitimate business interest justifies the discriminatory policy; and (3) what

14

the potential consequences of recognizing the new claim will be. (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 840, citing *Harris*, *supra*, at p. 1154.)

### 3. Appellants have failed to demonstrate that the alleged trial court error was prejudicial

Appellants argue the trial court erred by holding that the Unruh Act does not protect unrelated groups of friends from discrimination. They contend the Unruh Act covers all arbitrary discrimination and that application of the three-part *Harris* test warrants recognition of unrelated groups of friends as a protected class not expressly listed in the statute.

We need not reach that issue because we first determine that appellants have failed to demonstrate that any such error was prejudicial, which is fatal to their appeal. (*Paterno*, *supra*, 74 Cal.App.4th at pp. 105-106.)

As noted above, an appellant bears the burden of demonstrating prejudice. (*Paterno*, *supra*, 74 Cal.App.4th at p. 106.) A reviewing court cannot assume prejudice and will not assist appellant by "furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) An appellate court's duty to examine the entire cause to determine whether an error was prejudicial "arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument." (*Paterno*, *supra*, at p. 106.) "Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice." (*Ibid.*, citing *Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601.)

Appellants make only a cursory argument that the asserted error was prejudicial. The entirety of their argument in their opening brief consists of the following: "If the court had properly instructed the jury that discrimination against non-families violated the Unruh Act, and included that issue in the special verdict form, it is highly likely that the jury would have found that Rawson had violated the Unruh Act. Indeed, the evidence

on this issue was undisputed: Rawson admitted to Bonhage, to her former tenants, to the Broker, and even to the jury that she preferred to rent to a family." In their reply brief, they add only that the evidence "might have been" stronger had the trial court provided their desired instruction.

That falls well short of the requirement to spell out *exactly how* the error caused a miscarriage of justice, or that it is reasonably probable a result more favorable to appellants would have been reached in the absence of the error. (*Paterno*, *supra*, 74 Cal.App.4th at p. 106; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Appellants' argument also ignores or misunderstands the independent elements of liability under the Unruh Act and the structure of the special verdict form here that tracked those elements. As the trial court instructed the jury, "[t]o establish [their Unruh Act] claim, Mr. Bonhage and Ms. Collins must prove all of the following": (1) Rawson denied, discriminated, or made a distinction that denied full and equal accommodations, advantages, and privileges to appellants; (2) a substantial motivating reason for Rawson's conduct was the marital status of appellants or the people with whom they were associated; (3) appellants were harmed; and (4) Rawson's conduct was a substantial factor in causing that harm.

Consistent with these elements, question one of the special verdict form asked whether Rawson denied appellants full and equal accommodations—i.e., did she discriminate against them—and question two asked what the motivating factor was for that discrimination, if it took place—i.e., was it based on a protected category under the Unruh Act. Accordingly, the special verdict form directed the jury not to answer the remaining questions regarding the Unruh Act if it answered "No" to question one.

This structure tracks CACI No. 3060 and is consistent with existing authority, which recognizes the distinct elements. (*Harris*, *supra*, 52 Cal.3d at p. 1148 [Unruh Act "prohibits denial of access to public accommodations based on specified classifications"]; *Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d

16

1377, 1383 [Unruh Act "intended to provide recourse for those individuals actually denied full and equal treatment by a business establishment"]; CACI No. 3060.)

Appellants ignore this framework when they argue that their desired instruction would have led the jury to find that "Rawson violated the Unruh Act." That argument focuses only on the ultimate determination of liability, but disregards the individual elements required to establish it.

Most importantly, appellants overlook the first element—whether Rawson denied appellants full and equal accommodations at all—and the critical fact that their desired instruction would not have changed the jury's answer to question one. Instead, appellants' theory regarding the applicability of the Unruh Act, even if favorably construed, applies only to question two regarding the "motivating reason for Ms. Rawson refusing to offer to rent the House to Mr. Bonhage and Ms. Collins." But because the jury determined Rawson did not discriminate against appellants in the first place, it is immaterial whether they fell within a protected category under the Act. Without changing its answer to question one, the jury would not have found that Rawson "violated the Unruh Act."

Appellants' opening brief does not explain in any way how their desired instruction would have changed the jury's answer to question one. That omission alone constitutes waiver. (*Paterno*, *supra*, 74 Cal.App.4th at pp. 105-106.)

In their reply brief, addressing the issue for the first time, appellants declare that the jury's answer to question one "could not have included any finding that Rawson had not discriminated against non-families, because—as far as the jury was concerned—'full and equal' did *not* include protection for non-families." They also argue that "it is hard to imagine why the jury would have found that Rawson had no intent to discriminate against non-families, because there was evidence that *she confessed* to such intent . . . ." But these arguments reflect the same neglect or misunderstanding of question one, which

17

did not address whether the Unruh Act included protection for non-families or whether Rawson had "intent to discriminate."

Appellants' interpretation of the Unruh Act would not have altered the instruction for—or the answer to—question one, and appellants have offered no explanation as to how it might have.

Lastly, appellants argue that the trial court's statements to the jury "*prevented Plaintiffs' counsel from presenting evidence that bore specifically on Rawson's intent in this regard.*" But they do not identify any such evidence they would have presented that would have made a difference in the jury's answer to question one, which was appellants' burden.

The record also shows that, at trial, appellants' counsel understood that question one asked only whether Rawson had denied appellants the opportunity to live in the house, and had nothing to do with whether the Unruh Act protects groups of unrelated friends. At closing arguments, in encouraging the jury to answer "Yes" to question one, counsel explained: "But the question is, did Ms. Rawson deny full and equal accommodations to Mr. Bonhage and Ms. Collins? Obviously, yes. She denied them the opportunity to live in that house." To the extent appellants seek to advance a contrary interpretation of question one on appeal, they have not done so. Instead, they simply declare that the jury would have answered "Yes" to question one. As in *Paterno*, "[t]hat sort of claim is no substitute for a prejudice analysis, because it does not answer the constitutionally compelled question facing an appellate court, namely, assuming there was error, so what?" (*Paterno*, *supra*, 74 Cal.App.4th at p. 108.)[6]

To the extent a review of the entire record here might show that a more favorable result for appellants is reasonably probable, appellants have not made that showing and we will not create arguments for them. (*Paterno*, *supra*, 74 Cal.App.4th at p. 106 ["our

---

[6] Appellants have not challenged the jury's verdict on appeal.

18

duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument"].)

### 4. *We need not address appellants' arguments regarding the scope of the Unruh Act*

Appellate courts generally will not address issues whose resolution is unnecessary to disposition of the appeal. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1019, fn. 6.)

We need not address appellants' argument that the Unruh Act prevents arbitrary discrimination against groups of unrelated friends and that the trial court erred in instructing the jury to the contrary, because it would not change the result. The jury determined that Rawson did not deny appellants full and equal accommodations and appellants have not challenged the sufficiency of the evidence supporting that finding.

We affirm the judgment in appeal H047425.

### B. *Appeal of judgment awarding fees and costs to Rawson (H047477)*

Appellants challenge the trial court's granting of Rawson's motion for fees and costs, contending the court "was mistaken" because their argument that the Unruh Act should be extended to apply to groups of unrelated friends was "far from frivolous," and there was no "substantial evidence" showing their FEHA claim was frivolous.

As explained below, we conclude the trial court did not abuse its discretion in granting Rawson's motion and awarding the fees and costs under the FEHA statute.

### 1. *Applicable law and standard of review*

Government Code section 12965, subdivision (b)(6) provides that a court may award reasonable attorney fees and costs to the prevailing party in FEHA actions, except that "a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (b)(6);

*Patterson v. Superior Court* (2021) 70 Cal.App.5th 473, 487 [2018 amendment to statute incorporated asymmetrical standard recognized by prior case law].)

We review a trial court's award of fees under this section for an abuse of discretion. (*Robert*, *supra*, 224 Cal.App.4th at p. 73; *Rosenman v. Christiansen*, *Miller*, *Fink*, *Jacobs*, *Glaser*, *Weil & Shapiro* (2001) 91 Cal.App.4th 859, 865 (*Rosenman*).) "[A] reviewing court should not disturb the exercise of a trial court's discretion unless it appears there has been a miscarriage of justice." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Ibid.*)

Although appellants acknowledge that the trial court's decision is reviewed for abuse of discretion, they nevertheless contend "there was no substantial evidence showing that" their Unruh Act or FEHA claims were frivolous. Appellants cite *Cummings* for the proposition that an appellate court will find an abuse of discretion "when the trial court's finding that the action was 'frivolous' is not supported by substantial evidence showing 'that either the plaintiff's conduct was egregious or that his or her case was patently baseless for objective reasons.' " (*Cummings*, *supra*, 11 Cal.App.4th at p. 1389.)

We disagree that the substantial evidence standard applies in this context or that *Cummings* so holds. *Rosenman*, decided by the same court, confirmed that *Cummings* applied the abuse of discretion standard. The court first noted that its review of the record revealed "no substantial evidence to support a finding Rosenman's action was frivolous, unreasonable or groundless." (*Rosenman*, *supra*, 91 Cal.App.4th at p. 869.) The court explained, "as in *Cummings*, a review of the record reveals 'considerable proof appellant's claim of . . . discrimination was neither frivolous, unreasonable, or groundless.' " (*Ibid.*) For that reason, "as we did in *Cummings*, we find the trial court abused its discretion in awarding attorney fees . . . ." (*Ibid.*) Although the court used the

term "substantial evidence" in describing the evidence in the record, it unequivocally applied the abuse of discretion standard in both *Cummings* and *Rosenman*.

It is an appellant's burden to demonstrate that the trial court abused its discretion. (*Denham*, *supra*, 2 Cal.3d at p. 566.)

### 2. *The trial court did not abuse its discretion in granting Rawson's motion for fees and costs*

Although appellants contend the trial court abused its discretion, they largely ignore the actual grounds for its ruling. Instead, they argue that because their interpretation of the Unruh Act—that it protects unrelated groups of friends from discrimination—has merit, their lawsuit was not frivolous. But the trial court did not base its ruling on appellants' interpretation of the Unruh Act; instead, it based it on what it perceived to be appellants' egregious conduct in the lawsuit

As summarized above, the trial court determined the lawsuit was frivolous, unreasonable or groundless because: (1) Rawson never refused to rent her home to appellants' group; (2) there was no evidence her delay was motivated by discrimination based on marital status or retaliation; (3) appellants had teamed up with the outgoing tenants and tried to bully Rawson into making an overly hasty decision to rent to appellants' group; (4) Rawson had rented to unmarried couples in the past; (5) Rawson's actual concern that appellants' group was unstable "turned out to be accurate"; (6) appellants filed suit even after their friends decided not to share the rental, and "asserted (contrary to the facts) that it was Defendant's conduct caused their friends not to share the rental"; and (7) appellants' legal theory that FEHA prohibits discrimination against groups of unrelated friends sharing rental housing was "clearly without merit."

Even if appellants' interpretations of the Unruh Act were correct, it had nothing to do with the trial court's ruling awarding fees under Government Code section 12965, subdivision (b).

21

Appellants also argue that "evidence that Rawson in fact engaged in such discrimination was substantial." But the trial court considered the evidence in the record and determined that Rawson never refused to rent her home to appellants' group and that there was no evidence her delay in deciding whether to rent to them was motivated by discrimination based on marital status or retaliation. It was not an abuse of discretion to make that determination, even though appellants viewed the evidence differently.

Appellants claim that "[i]f *at least one* of a plaintiff's claims is non-frivolous—even a non-FEHA claim—then an award of attorney fees may not be imposed on a FEHA plaintiff." But that is not the law. Appellants cite *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590, 600 for support, but the case does not stand for that proposition. In *Delaney*, the court held that the trial court had not abused its discretion in denying a motion for attorney fees. (*Ibid*.) The case is inapposite, as here we review the trial court's decision to grant a motion for fees. Moreover, *Delaney* did not make the blanket holding appellants attribute to it; instead, it simply based its ruling in part on its determination that some of the plaintiff's claims could not be considered frivolous at that early stage of the proceedings. (*Ibid*.)

Appellants argue that the trial court relied on "what supposedly happened *after* the alleged acts of discrimination"—that is, that Rawson's concern that appellants' group was unstable "turned out to be accurate." The record does not support appellants' interpretation. The court did not base its ruling on what Rawson knew or suspected about appellants' instability—or the fact that her concerns proved prescient—but rather on what *appellants* knew at the time they filed the lawsuit. As the court explained in its ruling, McCargar "changed her mind about sharing the rental before the proposed move-in date stated in her application," and "Aspacio (who never submitted an application) had informed Plaintiffs that she was unwilling to sign a lease because she planned not to share the rental longer than six months." Despite that, "even after their two friends decided not to share the rental, Plaintiffs filed suit against Defendant and asserted

(contrary to the facts) that it was Defendant's conduct caused their friends not to share-the rental."[7]

Separately, appellants point to the trial court's denial of Rawson's summary judgment motion, claiming it "tends to show that the action was not frivolous." But the mere fact that a plaintiff survived summary judgment, while a potentially relevant consideration concerning an award of attorney fees to the defendant under Government Code section 12965, subdivision (b), does not preclude the trial court from finding that the FEHA claim was frivolous, unreasonable or without foundation. (*Rosenman*, *supra*, 91 Cal.App.4th at pp. 866-867; *Bond v. Pulsar Video Prods.* (1996) 50 Cal.App.4th 918, 923 ["Declarations sufficient to create a triable issue in a summary judgment proceeding may, in the crucible of a trial, be revealed to be spurious and the litigant's claim frivolous, unreasonable and without foundation."].)

Appellants claim the trial court held that they "had in fact produced evidence on this claim sufficient to raise a triable issue of fact." That misstates the record. The trial court ruled that appellants "have not presented any direct evidence from which it could be determined that Rawson acted with 'discriminatory animus' without inference or presumption." Despite that, the court could not conclude "that it would be impossible for a finder of fact to reasonably infer from Rawson's statements about preferring to rent to a 'family' and her decision to seek further tenant applications rather than providing a definitive answer as to whether she would rent the house to Plaintiffs after they were the

_____

[7] Appellants claim there was evidence that McCargar's and Aspacio's "decisions to pull out stemmed from Rawson's refusal to rent to a non-family." They contend that the trial court simply believed Rawson's evidence but not theirs. But the trial court is vested with the discretion to make precisely these kinds of determinations. (*Robert*, *supra*, 224 Cal.App.4th at p. 73.) Appellants have not presented any argument as to how the trial court abused its discretion in this context, as opposed to merely viewing the evidence differently than they do.

only ones to initially apply to do so that discrimination against Plaintiffs was a substantial motivating factor on her behavior."

Appellants do not explain how any aspect of the trial court's ruling on summary judgment undermines or even relates to the bases for its determination—after the crucible of trial—that the lawsuit was frivolous, unreasonable or groundless.

Lastly, appellants note that three of the jurors voted "Yes" to the question, "Did Ms. Rawson refuse to offer to rent the House to Mr. Bonhage and Ms. Collins?" They contend those three jurors "might have answered 'Yes' " to the subsequent question, which asked whether appellants' marital status was a substantial motivating reason for Rawson refusing to offer to rent the house. But that is mere speculation; appellants have identified no evidence to support that theory, much less establish that the trial court abused its discretion in spite of such evidence. In any case, nearly all of the stated bases for the trial court's ruling are unrelated to the special verdict form question at issue.

In sum, appellants have not demonstrated that there has been a miscarriage of justice or that the trial court exceeded the bounds of reason. (*Denham*, *supra*, 2 Cal.3d at p. 566.) After presiding over the entirety of the trial, the court determined that appellants had tried to bully Rawson into making a hasty decision, then unreasonably rushed to file their lawsuit, despite the absence of evidence of any discriminatory intent by Rawson. They also knew that McCargar and Aspacio no longer wanted to live with them, yet then asserted, contrary to the facts, that Rawson had caused those two to withdraw. As these conclusions are supported by substantial evidence in the record, the trial court did not abuse its discretion in awarding fees.

We affirm the judgment in appeal H047477.

24

### C. Appeal of summary judgment in Broker's favor (*H047362*)

Lastly, appellants challenge the trial court's granting of the brokers' motion for summary judgment as to the Unruh Act cause of action.[8] They contend there was a triable issue of material fact as to whether the brokers violated the Unruh Act by "instigating" or "aiding and abetting" Rawson's discrimination.

As explained below, we independently determine that there is no triable issue of material fact as to whether the brokers "instigated" or "aided and abetted Rawson's denial of full and equal accommodations" because the brokers introduced sufficient evidence to negate that element of the Unruh Act claim and appellants failed to carry their burden in return.

### 1. Summary judgment standards

Where a defendant has prevailed on summary judgment, " ' "we review the record de novo to determine whether [they have] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) The moving defendant "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Upon a defendant's prima facie showing of the nonexistence of such an element, the plaintiff "is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)

Under that approach, a reviewing court independently examines " '(1) the pleadings to determine the elements of the claim, (2) the motion to determine if it

---

[8] The brokers' motion for summary judgment was granted as to all causes of action asserted against them in the operative complaint, but appellants do not challenge the other aspects of the trial court's ruling here.

establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to "decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 323 (*Kim*).) " ' "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

Although we review the record de novo, the appellant nevertheless bears the burden of showing error on appeal. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455, citing *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 (*Claudio*).) Our independent review " ' "does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues." ' " (*Bains*, *supra*, at p. 455.) " ' "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." ' " (*Ibid*.)

### 2. *The relevant element of appellants' Unruh Act claim*

Appellants claim the brokers would be liable under the Unruh Act if they "had instigated" or "aided and abetted" Rawson's discriminatory policy. They cite Civil Code section 52, which provides, "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense . . . ." (Civ. Code, § 52, subd. (a).)

In their opening brief, appellants do not identify any such allegations in the operative complaint. Their own characterization of the complaint's allegations is "that Defendants' 'arbitrary' treatment of them violated the Unruh Civil Rights Act, alleging

26

both marital status discrimination and that 'Rawson believed that the group housing arrangement proposed by Plaintiffs was less stable than a family.' "

In their reply brief, they claim for the first time that the complaint "expressly alleged that Broker had aided and abetted Rawson's discrimination against non-families." Appellants contend these allegations frame the relevant element of the stated cause of action. They cite allegations in the complaint that Amarnath and Foster "acted as agents for Rawson" and "aided and abetted Rawson's discriminatory actions." The complaint also alleged that Foster e-mailed Rawson on September 5, 2014, communicating concerns about Collins as a tenant: "The problem I see with Brittany is that she's moving in with her Boyfriend and 2 other people responsible for rent. This kind of applicant could be a problem should someone on the lease decide to move/opt out of the lease agreement."

Appellants assert the complaint also alleged that Amarnath and Foster "discouraged Rawson from renting to Plaintiffs because they believed that their living situation would be unstable," and "Defendants' alleged concern about stability was a mere pretext for discriminating against [appellants] on the basis of marital status." In addition, "[f]rom September 8 to September 15, Rawson and her agents used the following tactics to discourage the Housemates from renting the Property: [¶] . . . Foster and Amarnath would not give Bonhage a definitive answer, or explain why the Housemates' applications were not being accepted. [¶] . . . Foster and Amarnath never contacted Bonhage with updates despite their promise to do so. [¶] . . . [¶] . . . Amarnath [scolded] Bonhage and [told] him that his behavior was inappropriate for even suggesting that he was being discriminated against because he was not a family. [and] [¶] Amarnath also refused to investigate Bonhage's claims, telling Bonhage that he had no right to make such demands."

Our independent examination of the pleadings shows that the element of appellants' Unruh Act claim for which there must be a triable issue of material fact is

27

whether the brokers aided or incited discriminatory conduct by Rawson pursuant to Civil Code section 52, subdivision (a).

### 3. *Appellants have waived any challenge to whether the brokers carried their initial burden*

In their opening brief, appellants do not contend the brokers failed to carry their initial burden of establishing that there was no triable issue of material fact on this point; accordingly, we consider any such challenge waived. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 (*Neighbours*); *Claudio*, *supra*, 134 Cal.App.4th at p. 230.)

In their reply brief, appellants contend for the first time that the brokers failed to carry their burden. However, "the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Neighbours*, *supra*, 217 Cal.App.3d at p. 335, fn. 8.) Appellants have not offered any such good reason and we can discern none.

Even if we had not considered appellants' argument waived, it is without merit. Appellants are incorrect when they claim that the brokers cited "no evidence that might rebut any of the Complaint's allegations regarding Broker's aiding and abetting Rawson's violation of the Unruh Act." In fact, the brokers introduced evidence in their separate statement of undisputed material facts in the form of deposition testimony of Bonhage, Collins, Aspacio, Amarnath, Rawson, Foster, Bulbul, and McCargar. That evidence supported their arguments that Rawson did not discriminate against appellants on the basis of familial or marital status in the first place, and that she was "in a state of economic and emotional flux . . . confused as to how to proceed [and] unable to respond to Plaintiffs' demand for an immediate decision." The brokers also argued that they and Rawson "became aware that Plaintiffs, broke their lease in their previous tenancy," that "information regarding the disclosure of previous landlords on the rental applications was required, and intentionally omitted," which gave them reason to "question the suitability"

28

of the tenants, and that the group had failed to provide applications for all prospective tenants as required, which gave rise to Rawson's indecision.[9]  Appellants have not addressed any of this evidence and have waived any challenges to its sufficiency in carrying the brokers' initial burden.

Our review is limited to whether appellants carried their burden by introducing sufficient evidence to create a triable issue of fact regarding their allegation that the brokers "instigated" or "aided and abetted" Rawson's discrimination.  (*Claudio*, *supra*, 134 Cal.App.4th at p. 230.)

### 4. *Appellants have not demonstrated a triable issue of material fact as to whether the brokers aided or incited Rawson's denial of full and equal accommodations*

We next examine appellants' opposition to the brokers' motion for summary judgment to " ' "decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Kim*, *supra*, 43 Cal.App.5th at p. 323.)  In opposing a motion, a plaintiff may not simply rely upon allegations or denials of the pleadings, but "must set forth specific facts showing that a triable issue of material fact exists."  (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201, citing Code Civ. Proc., § 437c, subd. (*o*)(2); *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583-584, 593.)  As noted above, the appellant must affirmatively demonstrate error by pointing out triable issues via citation to the record.  (*Claudio*, *supra*, 134 Cal.App.4th at p. 230.)

In their opening brief, appellants identify just one fact in their separate statement. In response to the brokers' assertion that they "did not give Rawson any advice as to the suitability of prospective tenants," appellants responded with: "Disputed. [Brokers] and Rawson discuss in an email thread that [brokers] advised Rawson that plaintiffs could

---

[9] Appellants thus mischaracterize the record when they contend the motion was "based entirely on the Broker's argument that the Act did not apply to discrimination against groups of unrelated friends."

29

cause a problem due to Collins moving in with her boyfriend and two friends. The email states that Rawson agreed with [Amarnath's] advice and that she would do whatever he suggested. (Email between [Foster], and [Rawson], and [Amarnath], Exhibit B, attached.)"

First, no such e-mail was actually attached to appellants' separate statement. Appellants acknowledge this point on appeal, but suggest that the omission is immaterial because the contents of the e-mail were included in Rawson's reply brief in support of *her* summary judgment motion and because Rawson subsequently offered similar testimony at trial. Appellants' argument is unavailing and the absence of actual evidence in support of their opposition is fatal to its cause. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162-163 [non-moving party must produce substantial responsive evidence sufficient to establish triable issue of material fact], citing *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735.)

It is well settled that a party must include actual evidence in support of its separate statement; a separate statement by itself with no supporting evidence does not constitute evidence. (Code Civ. Proc., § 437c, subd. (b)(3) ["Each material fact . . . shall be followed by a reference to the supporting evidence."]; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1014 [issue of fact is not created by speculation or conjecture, but must be created by actual conflict in the evidence submitted].)

In their reply brief, appellants claim the contents of Foster's September 5, 2014 e-mail were "alleged in full" in the declarations of Bonhage and Collins, submitted in support of appellants' separate statement of disputed facts. Appellants contend that is sufficient to create a triable issue of fact. However, they cite no authority in support of that proposition and it runs counter to the maxims outlined above—that the non-moving party must introduce actual, substantive *evidence*, not mere allegations or speculation. Absent evidence of the actual e-mail submitted in support of the separate statement, appellants offered only speculation that the e-mail exists and says what the declarants

30

claim it says. Although a reviewing court must liberally construe the non-moving party's showing and resolve any doubts in its favor, the " 'plaintiff's evidence remains subject to careful scrutiny.' " (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 389.) A reviewing court may only find " 'a triable issue of material "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." ' " (*Id.* at pp. 389-390, quoting *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) Here, appellants offered only hearsay statements regarding an e-mail that was not submitted in evidence to the trial court in support of their opposition to the brokers' motion.

Second, even if we were to accept appellants' argument that the contents of the September 5 e-mail were sufficiently included, it would not create a triable issue of material fact as to whether the brokers aided any discrimination by Rawson. Appellants did not identify any additional evidence in support of their opposition showing what role the e-mail played; that is, showing how it actually aided Rawson's discriminatory actions. Our role in reviewing the granting of the brokers' motion for summary judgment is limited to reviewing the facts as they were presented to the trial court, and the alleged errors presented to this court. (*Thompson*, *supra*, 11 Cal.App.5th at p. 1186, fn. 4; *Claudio*, *supra*, 134 Cal.App.4th at p. 230.) Appellants have not identified any such evidence that was submitted to the trial court in support of their opposition to the brokers' motion for summary judgment.

In addition, appellants' points and authorities in support of their opposition were entirely devoid of evidentiary citations or references relating to the *brokers*' motion. As the trial court noted in its ruling granting the motion, appellants appear to have copied their opposition to *Rawson's* motion and re-purposed it as an opposition to the brokers' motion. As a result, the opposition referred almost exclusively to arguments and evidence Rawson submitted in connection with her motion. In the portion of the

opposition relating to the Unruh Act claims, appellants argued only that the Unruh Act should be construed to protect groups of unrelated people. There was no discussion or citation to any evidence at all. To the extent appellants' separate statement included other relevant facts or evidence, they have not pointed them out to the trial court or this court, and we will not cull the record to attempt to uncover triable issues. (*Claudio*, *supra*, 134 Cal.App.4th at p. 230.)

We briefly address appellants' remaining contentions on appeal. First, appellants reiterate their arguments that the Unruh Act protects groups of unrelated friends from arbitrary discrimination. However, that is immaterial to our resolution here, which hinges on appellants' failure to carry their burden of establishing a triable issue of material fact as to whether the brokers aided or incited any discrimination by Rawson.

Appellants next contend that the trial court improperly based its ruling on a determination that the brokers "did not have an independent authority to rent the subject property to Plaintiffs." They argue that the Unruh Act "includes no such requirement," and that the brokers would be liable for "instigating" Rawson's discriminatory policy. We agree that liability under the Unruh Act can be based on either (1) direct denial of full and equal accommodations, or (2) aiding or inciting such denial. (Civ. Code, § 52, subd. (a).) As a threshold matter, though, we are not bound by the trial court's stated reasons in support of its ruling; instead, we review the trial court's ruling, not its rationale. (*Limited Stores*, *Inc*. *v*. *Franchise Tax Bd*. (2007) 152 Cal.App.4th 1491, 1496.)

Secondly, appellants have not challenged the trial court's factual determination on appeal that the brokers did not have authority to rent the property, and the complaint itself alleged that Rawson "is the person with ultimate authority to rent or sell this property." Appellants contend only that it is immaterial that the brokers lacked that authority because they could be liable for aiding Rawson's discrimination. We have addressed that contention above. In any case, the trial court's rationale is correct with respect to the first

32

basis of liability set forth above; that is, because the brokers did not have independent authority to rent the property, they could not have denied appellants full and equal accommodations.

Finally, we note that our resolution of appeal H047425, once final, will establish that Rawson did not deny appellants full and equal accommodations. When that issue has been fully and finally adjudicated in that manner, it will have preclusive effect against any subsequent litigation of it. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 ["*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case."].) "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*Ibid*.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at p. 825.)

Thus, even if we reversed the trial court's granting of the brokers' summary judgment motion, the brokers could not be liable for aiding Rawson's denial of full and equal accommodations because no trier of fact could determine that Rawson so denied them.

### III.　DISPOSITION

The judgments are affirmed in case Nos. H047362, H047425 and H047477. Respondents are awarded their costs on appeal.

_____
Wilson, J.

WE CONCUR:


_____
Danner, Acting P.J.


_____
Lie, J.


Bonhage et al. v. Rawson et al.
H047362; H047425; H047477